Filed 09/22/10　　　　　　　　　Case 09-30142　　　　　　　　　Doc 187

FILED
September 22, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002947104

Lewis Phon, Esq. (Bar # 74907)
LAW OFFICES OF LEWIS PHON
4040 Heaton Court
Antioch, CA 94509
(415) 574-5029 TEL
(925) 706-7600 FAX

Attorney for Debtor
Cecilia Mendez

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Cecilia Mendez,<br><br><br><br><br><br>　　　　　　　　　　　　Debtor.<br>_____/ | Chapter   11<br>Case No.   2009-30142<br><br>DCN: PD-1<br><br><br>REPLY TO OPPOSITION BY<br>BOYD REAL PROPERTY TO APPROVE<br>DISCLOSURE STATEMENT OF DEBTOR<br><br>DATE: September 29, 2010<br>TIME: 1:00 P.M.<br>DEPT: 34<br>JUDGE: Robert S. Bardwil |

BACKGROUND

　　Although the debtor has used DCN LP-9 for her motion to approve her disclosure statement, Boyd Real Property has used PD-1 as its DCN. Therefore, debtor will use the same DCN as Boyd.

　　The debtor, Cecilia Mendez, originally filed for Chapter 13 in this court on or about May 21, 2009. The case was converted to

Debtor's Disclosure Statement　　　　-1-

Chapter 11 on or about February 16, 2010. The debtor is the sole member of a limited liability company called Terracota, LLC that was formed on or about January 2, 2009.

In its opposition to approval of debtor's disclosure statement, Boyd Real Property, (hereinafter referred to as "Boyd"), refers to entities called Fireside California Group, Inc. ("Fireside") and "The Mario Juarez Selling Team" which Boyd claims the debtor has some insider relationships with.

Fireside was formed on October 12, 2004 as a California corporation but has been suspended for several years. Mario Juarez was the CEO, President and sole shareholder of Fireside. Fireside entered into a lease agreement with Boyd's predecessor, Mason Au, sometime in 2004. The lease transaction was handled by a real estate agent, Bonnie Chu. The written lease erroneously showed the debtor as "president" of the Fireside although she did not have any officer position with the company. There, apparently, was also a personal guarantee for the lease. The debtor believed that she was only signing as a guarantor for the lease.

In any event, the lease expired on or about February 2008 and both Mr. Au and Boyd were listed as a potential creditors on debtor's Schedule F should they have any issue with debtor's obligations under the lease. The debtor has no current relationship with Fireside.

Just prior to the expiration of the lease, on January 2, 2008, Fruitvale One, Inc. was formed by Mario Juarez who became the sole shareholder and officer of the corporation. The debtor was never an officer nor shareholder of Fruitvale One. In January, 2008, Fruitvale One, Inc. and Boyd entered into an oral agreement for

Fruitvale to take over the lease. However, approximately a year later, on or about January 2009, a new agreement was reached with Terracota, LLC to take over the lease. Terracota paid the rent directly to Boyd from that time on until February 2010.

On or about January 2009, Fireside sold its interests to Terracota for the sum of $10,000 in exchange for a promissory note. The debtor has disclosed her interests in Terracota under Schedule B of her petition.

The Mario Juarez Selling Team is not an entity at all and is not the DBA of either the debtor nor anyone else. It is simply an informal advertising logo for Mario Juarez who does not transact any business under that name. Mr. Juarez has never represented the name to be an "enterprise" nor is the debtor a "manager" of the Mario Juarez Selling Team.

American First Financial is a licensed real estate brokerage company operated by its broker, Rosana Eyvaznejad. The debtor has no interest in the company. The relationship between the debtor and American First is described in her disclosure statement. American First pays Terracota for office management services performed by the debtor and its staff.

During Terracota's tenancy, Boyd agreed to reduce the monthly rent to $2500 plus common area charges. The rent was paid by Terracota until January 31, 2010 and no check paid by Terracota was ever rejected or disputed by Boyd to be other than full payment for the rent.

On or about October 31, 2009, Boyd, through her counsel, Raye Mitchell, served a 30 days notice on Mr. Juarez and Fireside as well as "all occupants", which included the debtor and Terracota,

to terminate the tenancy by December 31, 2009. Boyd contended that the reduced rent term would end on December 31, 2009 and that the parties either had to reach a new rental agreement or the defendants would have to vacate the premises. The debtor informed Ms. Mitchell that she was in bankruptcy proceedings and that an eviction action would require permission from the bankruptcy court.

Notwithstanding the expiration date of the notice to vacate, Boyd accepted another rent check from Terracota for the month of January 2010 and refused to return it after it informed Terracota that there was no agreement as to the amount of the rent.

On or about February 2010, Boyd served a three days notice to vacate on the same parties alleging that there was back rent due allegedly for the period May 2009 to January 2010 although Terracota had timely paid all the rent for that period.

Shortly thereafter, without obtaining relief from the automatic stay, Boyd filed a complaint for unlawful detainer based upon the three days notice against the debtor and the other aforementioned parties. The debtor and Terracota filed a demurrer to the complaint alleging the three days notice was improperly calculated and has stated no cause of action. Oddly enough, just a few days prior to the hearing on the demurrer and without advising the debtor or the other defendants, Boyd dismissed the debtor and Terracota from the complaint and proceeded to obtain a default judgment against the remaining defendants.

When it was discovered that Boyd's counsel had used improper means to obtain the judgment, the court vacated the judgment.

Thereafter, instead of proceeding with the complaint, Boyd dismissed that complaint and served a new three days notice and

complaint except it did not name either the debtor nor Terracota as defendants although it did name Mr. Juarez as a defendant. When some of the other defendants filed a demurrer to that complaint as well, Boyd's counsel again dismissed those parties without serving them with a copy of the dismissal just prior to the hearing on the demurrer and proceeded to obtain a writ of possession against the remaining defendants. Mr. Juarez sought to quash the writ which the court granted.

As a result of the quashing of the writ, Boyd elected to file a complaint in the U. S. District Court against the aforementioned defendants but, again, without naming either the debtor nor Terracota. This is the complaint that Boyd alludes to in its opposition to approval of the debtor's disclosure statement. However, this complaint may end up being dismissed by the district court because Boyd failed to mention before filing the complaint that there was a parallel state court action and pending bankruptcy proceedings involving the debtor. See copy of court's order to show cause attached and incorporated by reference.

**BOYD HAS MADE A NUMBER OF INACCURATE FACTUAL STATEMENTS REGARDING THE DEBTOR'S FINANCIAL AND LEGAL STATUS.**

As admitted by Boyd, the debtor is not its tenant. Neither is the debtor either a former nor present officer or shareholder of Fireside California Group. The debtor is not an employee nor a "manager" of The Mario Juarez Selling Team which is simply an advertising logo. Boyd has presented no evidence of such either by declaration nor documentary evidence.

Boyd discusses at length its dealings with Mario Juarez who acted on behalf of his own corporations, Fireside or Fruitvale One.

See Opposition, page 2, lines 4-17, page 4, lines 8-12.  However, these dealings involved a lease that expired in February 2008 and has no affect on the debtor's ability to fund her plan.
The only impact that may be considered is whether the debtor's employer, Terracota, has a rental agreement with Boyd and if that has an affect on debtor's ability to earn income.  However, according to the state court order which may be res judicata, Terracota is the legal tenant of Boyd and has a right of possession until the court says otherwise.

Whether Terracota has a right to remain at the premises remains uncertain, but this is always true when a tenant does not have a written lease and may have its tenancy terminated upon thirty days notice.  Nevertheless, whether Terracota remains at the premises is not critical to the debtor's plan, as Terracota can always find a new location to work from.

If required to, the debtor could expand her disclosure statement to include a more detailed discussion of Terracota's ability to remain at the premises, but unless Terracota has a written lease and the debtor has disclosed that Terracota has not, the debtor is not depending on Terracota's continued tenancy at Boyd's building to earn a living.

**THERE WERE NO PREFERENCE TRANSFERS BETWEEN  THE PARTIES THAT WERE ALLUDED TO BY BOYD.**

Boyd refers to "preference transfers" and "insider transactions" in its opposition. See Opposition, page 2, lines 1-3.  A preference transfer is defined as transfer of cash or property of the debtor to or for the benefit of a creditor on account of an antecedent debt within 90 days before the filing of

the bankruptcy or within one year of the bankruptcy if the transfer is to an insider while the debtor was insolvent. Boyd attempts to describe the transfer of assets from Fireside to the debtor and wages paid by Terracota to Mr. Juarez as preference transfers.

The sale of assets from Fireside to Terracota was not to the debtor. However, even if the sale was to the debtor, it was a transfer to, rather than from, the debtor and it was not for payment of an antecedent debt of the debtor.

As to the wages paid to Mr. Juarez, it is Terracota, which is not in bankruptcy, who is paying Mr. Juarez. Further, these payments are for current services and not for antecedent debt.

Moreover, besides not being prefernce transfers, these transactions are not out of the ordinary transactions and were not done with the intend to defraud creditors.

To the extent that these transactions may constitute insider transactions, the debtor may include a discussion in her disclosure statement but these transactions have no impact on her ability to fund nor implement her plan.

**THE LAWSUIT FILED BY BOYD AGAINST MARIO JUAREZ AND OTHER DEFENDANTS HAS NO REAL IMPACT ON THE DEBTOR.**

Though the lawsuit is pending in the district court, neither the debtor nor Terracota are named as defendants. The gist of the complaint is that the defendants are unlawfully trespassing on the property of Boyd even though they are under a landlord tenant relationship and have a right to possess the property. Boyd is attempting to prove that the tenancy was terminated even though it had lost that issue two times in the superior court. The remaining causes of action mostly are tied to the theory that somehow the

Debtor's Disclosure Statement -7-

defendants are conspiring to deprive Boyd of the use of the premises and Boyd is entitled to punitive damages. The complaint is no more than a disguised eviction action and the district court will, most likely, dismiss the action. More importantly, the superior court has already ruled that Boyd cannot enforce any writ of possession against these defendants without a further court order.

    Boyd seems to argue that should it win its complaint against Mr. Juarez and the other defendants, that Mr. Juarez's ability to pay child support to the debtor will be affected. Boyd's assumption that it will win its complaint against Mr. Juarez is highly speculative, at best. Boyd seems to claim that Mr. Juarez is now its tenant but in January of 2010, it chose to sue the debtor and Terracota as the tenants. Boyd does not seem to know who really are the tenants. Boyd has absolutely no evidence that Mr. Juarez was a tenant of Boyd.

    As to whether the lawsuit will affect Mr. Juarez's ability to pay child support, again, such a claim is highly speculative and unsupported. The central claim is that Mr. Juarez is depriving Boyd of the use of the premises by unlawfully depriving Boyd of possession. Boyd simply ignores the fact that until a court rules otherwise, there exists a landlord tenant relationship with someone and that Mr. Juarez is at the premises lawfully. More importantly, Boyd has already lost this issue at the superior court level. Boyd is not likely to prevail at the district court level and will, very likely, pay sanctions to Mr. Juarez.

    Until Boyd decides to file a complaint against the debtor in the bankruptcy court, there is no action against the debtor. The

debtor has already stated in her disclosure statement that Boyd had attempted to terminate Terrocata's possession of the premises but had dismissed it from the proceedings. This is a true statement. Debtor has also stated that Boyd may file another action against the debtor, but based upon its prior conduct, it is uncertain what Boyd will do until it actually does it.

## CONCLUSION

The debtor does not object to including a more detail discussion of her transactions with Mr. Juarez and the pending lawsuit in the district court. However, Boyd has no support for a number of its allegations and the transactions referred to by Boyd have no material impact on debtor's to fund her plan. More importantly, Boyd has admitted that the debtor was not its tenant and, therefore, has no obligation under the lease except as a guarantor. However, Boyd has made no claim that the debtor owes it any monies nor has it provided any statements nor calculations to the debtor of any outstanding balances. Boyd seems to be objecting to the disclosure simply because of the debtor's relationship with Mr. Juarez who is not the responsibility of the debtor.

Dated: September 21, 2010              /s/ Lewis Phon

_____
Lewis Phon, Attorney for
Debtor, Cecilia Mendez

k:\data55\ceciliamendez\replytoopposition

Debtor's Disclosure Statement              -9-